## STANDARD DRUG STORE v. A. E. WOOD & CO.

1. EVIDENCE—TESTIMONY AS TO LABELS ON CARBOYS INCOMPETENT TO ESTABLISH CONTENTS—FIRES.

   In an action for rent, where defendant moved out because part of the leased premises were damaged by fire of unknown origin, and it sought to avoid liability by establishing the theory that the fire was caused by plaintiff's negligence in allowing water to come through the roof and fuse with certain chemicals stored by it in a part of the building controlled by it, it was incompetent to establish, by the labels on the carboys, the contents thereof, for the purpose of establishing the truth of said theory.

2. SAME—HYPOTHETICAL QUESTION.

   Where there was no evidence given or tendered showing that water coming in contact with any of the acids, chemicals, or articles supposed to be in plaintiff's store room would cause fire, or that any of said acids or chemicals were actually in said store room, a hypothetical question based upon said fact, put to a chemist, for the purpose of determining the cause of the fire, was properly rejected.

3. SAME—THEORY MUST BE SUPPORTED BY LEGAL EVIDENCE.

   Inability to meet legal requirements of evidence in support of a theory does not brush aside rules and open the way to supposition and inferences without evidentiary support.

4. SAME—PRESUMPTION MAY NOT REST UPON PRESUMPTION.

   Although presumptions and inferences may be drawn from facts established, presumption may not rest upon presumption nor inference upon inference.

Error to Wayne; Collingwood (Charles B.), J., presiding. Submitted April 23, 1924. (Docket No. 121.) Decided June 2, 1924.

Assumpsit by the Standard Drug Store against A.

E. Wood & Company for rent. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Campbell, Dewey, Stanton & Bushnell,* for appellant.

*Bishop, Kilpatrick & Weaver,* for appellee.

WIEST, J. This case has been here before (206 Mich. 564). Defendant was plaintiff's tenant under a lease of the second, third, fourth, fifth and sixth floors of a building together with entry way from the street. Plaintiff reserved a portion of the sixth floor. Late Sunday night, April 9, 1916, with no one in the building for about 27 hours, fire broke out on the sixth floor on the side occupied by plaintiff as a store room for drugs and druggist's supplies. This fire destroyed the roof but did not go below the sixth floor. Water, however, did go below the sixth floor. The firemen in subduing the fire threw debris upon the part of the sixth floor occupied by defendant. Later defendant removed some of such debris. The roof having been destroyed and defendant's occupancy of the sixth floor interfered with defendant moved out about a month after the fire. This suit was brought to recover rent for a period of 11 months, the time between the fire and the expiration of the term under the lease. Defendant, under plea of the general issue, gave notice that the fire rendered the premises untenantable; that the fire was caused by the negligence of plaintiff; that oils, chemicals and highly inflammable and dangerous substances were kept by plaintiff on the sixth floor and so carelessly handled that some portion thereof leaked and escaped from their containers and caused the fire; that plaintiff's negligence in causing the fire, together with permitting rubbish and material to remain on defendant's part of the sixth floor, amounted to an eviction

of defendant and plaintiff's failure to repair the roof also constituted an eviction. Defendant also gave notice of recoupment, setting up plaintiff's negligence in storing and handling oils, chemicals and inflammable substances on the sixth floor thereby causing the fire with damage to defendant. When the case was here before this court held no duty rested upon plaintiff to repair the roof. That opinion disposes of the question of eviction except as to the rubbish piled on defendant's part of the sixth floor, and we hold such constituted no reason for claiming an eviction. Verdict was directed in favor of plaintiff for the rent.

Just how defendant is in position to claim an eviction because of debris on its part of the sixth floor is hard to understand. Certainly little use could be made of that floor with the roof burned off, a roof plaintiff was not bound to replace under the lease. Defendant company is liable for the rent during the term of the lease, unless the fire was caused by the negligence of plaintiff company. Was defendant prevented, by improper exclusion of evidence, from establishing the fact that the fire was a result of plaintiff's negligence? What caused the fire? It was impossible for defendant to show to a certainty what caused it for no one apparently knows its origin. When discovered the fire was in full sweep and had obliterated the place and method of its origin. Defendant advanced a theory on the subject, and our task is to determine whether the tendered proof in support thereof went beyond mere conjecture. It appears there was a small hole through the roof where a bolt holding the fire escape had come out and it was the claim of defendant that snow had fallen on the roof some time before the fire and had melted. The defense was made on the theory that water from melted snow ran through this bolt hole in the roof to the floor below, came in contact with some chemical or acid

which, upon fusion therewith, ignited and started the fire. In an effort to prove such theory it was necessary to show the presence of some chemical or acid having the property of igniting upon fusion with water, and defendant sought, by labels upon carboys and bottles, to show that certain chemicals and acids were there.

The trial judge refused to permit such testimony to go to the jury. Had defendant a right to go to the jury and ask for a finding that such labels constituted sufficient evidence as to contents? We think not. Defendant also offered testimony that, the day before the fire, and upwards of 20 feet from where water came through the bolt hole in the roof to the floor, workmen of plaintiff, in pouring liquid from a pitcher into a carboy, labeled "sulphuric acid" spilled some upon the floor and then threw sawdust upon it.

Is it good logic to reason that sulphuric acid was in the carboy because of the label? The carboy may at some time have contained such acid, but did it then? From the fact of such label on the carboy it is claimed there was established the fact of such acid in the carboy and, therefore, it was such acid spilled on the floor. May not such a label exist on a carboy without acid at all in the carboy? The label alone did not warrant the inference sought to be drawn. The trouble with defendant's case is that the jury would have to presume that water in fact came through the bolt hole in the roof in sufficient quantity to run at least 20 feet across the floor; then base on this presumption another presumption that such water made contact with some acid or chemical spilled on the floor and the further presumption that such union of water and acid or chemical resulted in combustion and set fire to the building. This would permit the jury to render a verdict on a mere guess.

A chemist called by defendant was asked:

"*Q.* Now, in this case, Mr. Putnam, there is testimony that a fire originated in a storeroom used by a drug store and that fire was discovered about the hour of 11:30 p. m. on Sunday night. There is testimony that there was no wiring or electrical apparatus in this section of the building where the fire originated; there is testimony that no human agency intervened—or, possibly, I might better say that no person had access to this particular place since nine o'clock of the previous Saturday night, or a period of about 27 hours. There is testimony there was snow on the roof of the building immediately above this store room, and that the roof had been leaking immediately previous to this time; there is testimony that there were in this store room a number of articles used in drug stores; among these articles was sulphur, lamp black, packing hay, matches, permanganate of potash, and carboys containing nitric acid, sulphuric acid, hydrochloric acid; and there is testimony that a carboy containing or labeled sulphuric acid had some of its contents drip on the floor and covered with sawdust on the previous Saturday afternoon; there is also testimony that the temperature on Sunday during the day time was above freezing, or at a melting point. I ask you, assuming that these facts were so, whether or not you can state what in your opinion was the cause of this fire?"

To this question an objection was interposed on the grounds that the assumed facts therein had not been established and the notice attached to the plea did not cover the subject. We find no occasion to pass upon the sufficiency of the notice under the plea. We have searched this record and find no evidence, given or tendered, showing that water coming in contact with any of the acids or chemicals or articles supposed to be in the store room would cause fire. The question put to the chemist throws no light on this subject, and if it had been answered would have invaded the province of the jury. Whether water coming in contact with sulphur, lamp black, permanganate of potash, nitric acid, sulphuric acid or hydrochloric acid will start a fire should, if true, have been shown.

Beyond this the evidence in the case fails to show the presence of such acids or chemicals on the premises and much less where water leaking through the roof did come in contact therewith. The question to the chemist called for a bare guess as to the cause of the fire. It was for the jury to say what caused the fire, and this could only be found upon evidence showing the presence of acids or chemicals spilled upon the floor, capable of being ignited, and ignited by water coming through the hole in the roof and fusing therewith.

Inability to meet legal requirements of evidence in support of a theory does not brush aside rules and open the way to supposition and inferences without evidentiary support. Presumptions and inferences may be drawn from facts established but may not rest, presumption upon presumption or inference upon inference. A defense should not only have a theory but as well be supported by evidence of probative value. It will not do to say, if the roof leaked, if acids or chemicals ignitable by fusion with water were in the room at a distance from the leak, if water leaked from the roof and came into contact with some such acid or chemical, the fire might have originated in that way, for this strings together too many inferences resting upon conjectural possibilities to rise to the dignity of evidence. Defendant's theory of the origin of the fire, under the most favorable view of the evidence tendered, never advanced beyond a mere conjecture and did not come within hailing distance of probability. This disposes of the claim by way of recoupment.

The learned circuit judge was clearly right in directing the verdict.

Affirmed, with costs to plaintiff.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.